UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

AHMAD KEMET ALI #166740,

               Plaintiff,                             Case No. 2:07-cv-161

v.                                           Honorable R. Allan Edgar

PATRICIA L. CARUSO,

               Defendant.

_____/

### REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

## Discussion

I.   Factual allegations

Plaintiff Ahmad Kemet Ali, an inmate at the Ojibway Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Patricia L. Caruso, who is employed as the Director of the Michigan Department of Corrections (MDOC).  Plaintiff alleges in his complaint that Defendant has refused to implement an executive order mandated by the executive branch of the State, which requires that all prisoner housing units be smoke free.

Plaintiff states that he wrote to Defendant on February 15, 2007, and complained that Executive Order Number 1992-3 was not being implemented in prisoner housing units at the Ojibway Correctional Facility.  Plaintiff also filed a grievance regarding this issue and sent it to James Armstrong of MDOC Prisoner Affairs.  Plaintiff claims that Mr. Armstrong returned his grievance and instructed him to file it at step I.  Plaintiff filed the step I grievance against Warden James White, stating that he was being subjected to a carcinogenic environment filled with second-hand smoke.  Plaintiff was interviewed on this grievance on March 28, 2007, and was offered an application to see if he qualified to be housed in an area of F-Unit where the inmates were not allowed to purchase tobacco products.  Unfortunately, the rest of the unit was allowed to purchase tobacco, so that prisoners are still being subjected to second-hand smoke.  Plaintiff refused the application due to the fact that the housing unit was not actually smoke free.

Plaintiff contacted Leo Friedman, at MDOC Human Resources, regarding the problem of second hand smoke in the housing units.  Plaintiff received a response from Administrative Assistant Sean Lockhart on March 5, 2007, stating that the issue would be forwarded to Warden White.  Plaintiff then wrote to Warden Jeff White and asked whether it was his responsibility to implement Executive Order 1992-3, but Warden White did not respond to Plaintiff's

letter.  On April 10, 2007, Plaintiff sent a second notice to Defendant, complaining of the second hand smoke problems at the Ojibway Correctional Facility.  On April 20, 2007, Plaintiff received a response from James W. Macmeekin, Regional Prison Administrator, stating that the issue would be brought to the attention of Warden Jeff White.  Plaintiff alleges that he also contacted Robert Lanni, with the Tobacco and Special Litigation Division of the Attorney General's Office, who forwarded the letter to James Armstrong.  Plaintiff was once again instructed to file a step I grievance on the issue.  Plaintiff states that he has not received any relief and that the exposure to second hand tobacco smoke violates his rights under the United States Constitution.

## II.   Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff claims that his continued exposure to second hand tobacco smoke violates his constitutional rights.  When prison officials ignore a prisoner's serious medical condition such as allergy or asthma relating to second-hand smoke and do not make a good-faith effort to enforce non-smoking policies or to segregate prisoner from exposure to smoke, a prisoner may state an Eighth Amendment claim based upon exposure to environmental tobacco smoke.  *See*

- 3 -

*Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005)(citing *Hunt v. Reynolds*, 974 F.2d 734, 726 (6th Cir. 1992)).

Plaintiff asserts an Eighth Amendment claim against Defendant based on his exposure to high levels of environment tobacco smoke (ETS) while confined at the Ojibway Correctional Facility, which allegedly posed an unreasonable risk of serious damage to his future health. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment also obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A prison official violates the Eighth Amendment when he or she is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

*Helling v. McKinney,* 509 U.S. 25 (1993) is the seminal Supreme Court case in this area. In *Helling*, a prisoner initiated a § 1983 action against prison officials claiming that his involuntary exposure to ETS from a cellmate[1] posed an unreasonable risk of serious damage to his future health in violation of the Eighth Amendment. *Helling*, 509 U.S. at 35. The Supreme Court affirmed the decision of the Court of Appeals to remand the case to the district court to allow the prisoner an opportunity to prove his case, which also required the prisoner to prove both the subjective and objective elements necessary for an Eighth Amendment violation. *Id*. Relevant to the objective element is whether the prisoner endured unreasonably high exposure to ETS that society would consider violative of contemporary standards of decency. *Id.* at 35-36. Relevant to

---

[1]The cellmate in *Helling* smoked five packs of cigarettes a day. *Helling,* 509 U.S. at 35.

the subjective element is whether prison officials had exhibited deliberate indifference with regard to the dangers of a prisoner's exposure to ETS. *Id*. at 36.

In the opinion of the undersigned, Plaintiff fails to satisfy the objective component for an Eighth Amendment violation. To prove the objective element, the prisoner must first show that he has been exposed to unreasonably high levels of ETS.[2] *Id.* at 35. "More than mere scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will be caused by exposure to ETS" is necessary to establish the objective component. *Id.* at 36. Second, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.* Plaintiff alleged that he was exposed to high levels of ETS while confined at the Ojibway Correctional Facility because of the lack of enforcement of the MDOC's non-smoking policy. Nevertheless, Plaintiff failed to provide any evidence measuring or quantifying his level of exposure. Plaintiff's conclusory allegations regarding the level of ETS to which he was exposed fail to support the objective component of an Eighth Amendment claim. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000).

The Supreme Court in *Helling* did not mandate smoke free prisons. *Williams v. Howes,* No. 1:05-cv-817, 2007 WL 1032365, at *14 (W.D. Mich. Mar. 30, 2007) (citing *Scott v. Dist. of Columbia*, 139 F.3d 940, 942 (D.C. Cir. 1998) and *Mansoori v. Lappin,* No. 04-3241-JAR,

---

[2]"Plainly relevant to this determination" was the fact that plaintiff in *Helling* had been moved to a different prison and was "no longer the cellmate of a five-pack-a-day smoker." *Helling,* 509 U.S. at 35. The Supreme Court also observed that the prison had adopted a formal smoking policy restricting smoking to certain areas and where wardens could, contingent on space availability, designate non-smoking areas in dormitory sections. *Id.* at 35-36. The Supreme Court noted that the changed policies could make it impossible for the plaintiff to prove that he would be exposed to an unreasonable risk of ETS with respect to his future health. *Id.* at 36.

2007 WL 401290, at *10 (D. Kan. Feb. 1, 2007)).  A prisoner's exposure to smoke must cause more

than mere discomfort or inconvenience.  *Talal v. White,* 403 F.3d 423, 426 (6th Cir. 2005).  Plaintiff

does not present any evidence that his exposure to ETS caused him anything beyond discomfort.  In

his complaint, he does not allege any serious medical problems related to the ETS exposure such as

asthma or allergies.

It is also obvious from the case law in this area that the risk of which Plaintiff

complains *is* one that today's society chooses to tolerate.  *See Griffin v. DeRosa*, 153 F. App'x 851,

853 (3d Cir. 2005) (a prisoner's allegation that he had been exposed to ETS in inadequately

ventilated restrooms over twenty months failed to show that the prisoner was exposed to

unreasonably high levels of ETS contrary to contemporary standards of decency); *Hankins v. Bethea*,

No. CIVA 0:05-3334 DCNBM, 2007 WL 172509, at *6 (D.S.C. Jan. 18, 2007) ("[e]xposure to

moderate levels of cigarette smoke is a common fact of contemporary life, and [p]laintiff has failed

to present evidence to show that the amount of ETS he was exposed to during the relatively short

[5-month] period of time set forth in his [c]omplaint was at such an unreasonably high level that it

violated contemporary standards of decency"); *Colon v. Sawyer*, No. 9:03-CV-1018 LEK/DEP, 2006

WL 721763, at *9 (N.D.N.Y. Mar. 20, 2006) (asthmatic plaintiff's claim that "he [was] housed in

a dormitory unit where smoking [was] permitted, and that he [was] subjected to ETS near the dining

hall entrance and exit, as well as his speculation that such circumstances 'may result in catastrophic

harm to [him],' . . . simply [did] not describe conditions that rise to a level which today's society

chooses not to tolerate"); *see also Conyers v. Mich. Dep't of Corr*., No. 5:06-cv-100, 2006 WL

2644990, at *6 (W.D. Mich. Sept. 14, 2006).  Therefore, Plaintiff's allegations fail to satisfy the

objective element for an Eighth Amendment claim.

- 6 -

Plaintiff further fails to meet the subjective element of the *Helling* test, i.e., that Defendant was deliberately indifferent to Plaintiff's exposure to unreasonably high levels of ETS. The MDOC has a policy which prevents smoking in the facility housing units. Defendant is not present at the Ojibway Correctional Facility and is not actively involved in the actual enforcement of the non-smoking policy. Moreover, after Plaintiff brought the issue to prison officials' attention by way of a grievance, he was given a new Tobacco-Free Housing Unit Form to complete, but chose not to because he did not believe that this would guarantee an entirely smoke free environment. In addition, prison officials had appropriate policies in place. Policy Directive 01.03.140 states that smoking is prohibited in prisoner housing units. *See* MICH. DEP'T OF CORR., Policy Directive 01.03.140, ¶ B. The adoption of the MDOC's no smoking policy and the prison officials' current attitude and conduct, which reflect a "zero tolerance" for smoking in the housing units, bears heavily on the deliberate indifference inquiry. *Helling*, 509 U.S. at 36. Plaintiff complains that prison officials did not enforce the smoking policy. It is well established that imperfect enforcement of a non-smoking policy does not rise to the level of deliberate indifference. *Talal*, 403 F.3d at 427; *Wilson v. Hofbauer*, 113 F. App'x 651, 652 (6th Cir. 2004) (imperfect enforcement of MDOC Policy Directive 01.03.140, which prohibited smoking in all occupied buildings, including housing units, "show[ed], at most, negligence by the defendants, rather than deliberate indifference"); *Moorer v. Price*, 83 F. App'x 770, 773 (6th Cir. 2003) (imperfect enforcement of MDOC Policy Directive 01.03.140 does not equate to deliberate indifference). Therefore, I recommend that Plaintiff's allegations fail to state an Eighth Amendment claim.

Furthermore, Plaintiff fails to make specific factual allegations against Defendant Caruso, other than his claim that she failed to conduct an investigation in response to his grievances. A claimed constitutional violation must be based upon active unconstitutional behavior. *Greene v.*

*Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Id*.; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Plaintiff has failed to demonstrate that Defendant Caruso engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against Defendant Caruso.

### Recommended Disposition

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

 /s/ Timothy P. Greeley                                    
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   October 17, 2007

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).